[No. 9191–3–I. Division One. September 15, 1982.]

THE STATE OF WASHINGTON, *Respondent,* v. HILTON
CHELLY, *Defendant,* PHILLIP LEE STEWART,
*Appellant.*

*Michael Filipovic* and *Rosemary Bordlemay* of *Seattle–King County Public Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Christopher Washington, Michael A. Walsh,* and *William Harris, Deputies,* for respondent.

DURHAM, A.C.J.—Shortly after 2 a.m. on February 13, 1980, Yuen Chun Gee walked through the parking lot in front of the Lotus Food Store in Seattle and saw a "blue/black" Lincoln Continental parked with its back toward the store window. The window was broken, and Gee noticed three people putting things into the car's trunk. He heard one of them say, "Get more cigarettes and liquor and wine." Gee summoned police, who soon apprehended appellant Phillip Lee Stewart and his two codefendants, Chelly and Frost, in a blue Lincoln Continental. Gee recognized the car as the same one he had seen earlier, but could not make a positive identification of the men he saw loading the car's trunk. Cases of beer and wine, cigarettes, and loose papers found in the car were identified as being from the Lotus Food Store.

Stewart did not take the stand at trial. Codefendant Chelly testified that on the night in question he, Frost, and Stewart had purchased alcohol from a stranger who put it in the trunk of Chelly's car, a Lincoln Continental. Chelly opened the trunk by means of a button inside the car, and did not actually observe the stranger place anything in the trunk. The trio then proceeded to the Lotus Food Store parking lot where they were stopped by police.

Stewart was convicted by jury of second degree burglary. His first assignment of error on appeal is that the information by which he was charged failed to inform him specifically of the underlying crime he intended to commit while in the store. Because Stewart did not object to the sufficiency of the information nor file a motion for a bill of

particulars, pursuant to CrR 2.1(e), he has waived this issue on appeal and we will not consider it. As our Supreme Court has stated:

> Objections to the sufficiency or definiteness of an information must be made before the trial commences. If delayed until the beginning of the trial, they are not timely. *Seattle v. Morrow,* 45 Wn.2d 27, 273 P.2d 238 (1954).

*State v. Thomas,* 73 Wn.2d 729, 733, 440 P.2d 488 (1968).

Stewart next assigns error to the following instructions given by the trial court:

> A person commits the crime of burglary in the second degree when he or she enters or remains unlawfully in a building with intent to commit a crime against a person or property therein.

Instruction 4.

> To convict the defendant Phillip Lee Stewart of the crime of burglary in the second degree, each of the following elements of the crime must be proved beyond a reasonable doubt:
>
> (1) That on or about the 13th day of February, 1980, the defendant entered or remained unlawfully in a building;
>
> (2) That the entering or remaining was with intent to commit a crime against a person or property therein; and
>
> (3) That the acts occurred in King County, Washington.
>
> If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.
>
> On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

Instruction 7. The jury was also instructed that "[t]heft is a crime." Instruction 11.

Stewart argues that these instructions were erroneous for three reasons: (1) if theft was the underlying crime in question, then it is an element of the crime and must be identified in the instructions, (2) the failure to identify the underlying crime may have resulted in a nonunanimous

verdict, and (3) possessing stolen property was a lesser included offense of burglary and the jury should have been so instructed. We shall discuss these contentions in order.

Stewart first assigns error to the trial court's failure to instruct the jury on the elements of theft, arguing that if theft is the underlying crime relied upon by the State, then it is an element of burglary.

We disagree. The State is not required to charge and prove intent to commit a particular crime, but only the presence of criminal intent at the time of illegal entry. In instruction 4, the trial court properly instructed the jury on the elements of burglary, *i.e.,* (1) the unlawful entering or remaining in a building, and (2) with intent to commit a crime therein. This instruction comports with the statutory definition of burglary.[1] Had the Legislature intended to include the underlying crime as one of the elements of burglary, it would surely have done so. Indeed, the underlying crime, if committed, may be charged, and the defendant punished therefor, separately.[2] We are satisfied that the State need only prove entry with criminal intent rather than intent to commit a particular crime.

Good reason exists for this conclusion. Knowledge of criminal intent usually resides exclusively in the mind of the defendant. He may unlawfully enter a building with the intent to commit a certain crime, and ultimately commit a different crime, or no crime at all. He is nonetheless guilty of burglary. In either case, the State would be hard pressed to prove entry with intent to commit a crime if it were required to specify exactly which of several crimes available to the defendant he intended to commit. Such a require-

---

[1] RCW 9A.52.030 provides:

"(1) A person is guilty of burglary in the second degree if, with intent to commit a crime against a person or property therein, he enters or remains unlawfully in a building other than a vehicle."

[2] RCW 9A.52.050 provides:

"Every person who, in the commission of a burglary shall commit any other crime, may be punished therefor as well as for the burglary, and may be prosecuted for each crime separately."

ment would seriously weaken the enforcement of burglary laws. Of course, in cases where the specific crime intended is made obvious by surrounding circumstances, the better practice would be to identify that crime. Nonetheless, the trial court did not err in failing to instruct on the elements of theft.

Stewart next claims that the failure to instruct on the underlying crime which he intended to commit may have caused the jury to return a nonunanimous verdict. The jury could have concluded from the evidence that the underlying crime was theft, robbery, or possessing stolen property. Thus, he argues, it is possible that the jurors did not agree as to which crime Stewart intended to commit.

There is no question that a jury must unanimously find each element of a crime proven beyond a reasonable doubt. *State v. Badda,* 63 Wn.2d 176, 385 P.2d 859 (1963). In a burglary case, the jury must find the presence of criminal intent unanimously. However, that is a far cry from requiring unanimity as to the underlying crime. Inasmuch as we have concluded that the identity of the underlying crime is not an element of burglary, unanimity as to it is not required. So long as the jury unanimously finds that entry was effected with criminal intent, we are satisfied that that element has been met.

Stewart's argument is particularly unpersuasive here where the underlying crime was clearly theft. The facts simply do not support his contention that a reasonable juror might have found the underlying crime to be robbery or possessing stolen property.

Stewart's final assignment of error concerns the trial court's failure to give his requested instruction on a lesser included offense; *i.e.,* possession of stolen property. His theory is that the crucial evidence in this case, his possession of stolen property, was evidence of both theft and his intent to commit a crime, an element of burglary. Because possession of stolen property is a lesser included offense of theft, *State v. Alford,* 25 Wn. App. 661, 611 P.2d 1268 (1980), *aff'd sub nom. State v. Claborn,* 95 Wn.2d 629, 628

P.2d 467 (1981), and theft was the underlying crime upon which the burglary rested, Stewart argues that possession of stolen property is, under these facts, a lesser included offense of burglary.

■■ A defendant is entitled to an instruction on a lesser included offense if (1) each of the elements of the lesser crime is an element of the offense charged, and (2) the evidence supports an inference that the lesser crime was committed. *State v. Workman,* 90 Wn.2d 443, 584 P.2d 382 (1978). The elements of second degree burglary have been listed earlier in this opinion. The elements of possessing stolen property are possession of stolen property with knowledge that it is stolen. RCW 9A.56.140. The two crimes share no element in common.

Stewart urges us to apply the so-called "inherent relationship" test to find a lesser included offense. Under this approach, a court considers the evidence presented to determine if an inherent relationship exists between the greater crime and the one alleged to be a lesser included offense. *United States v. Johnson,* 637 F.2d 1224 (9th Cir. 1980); *United States v. Stolarz,* 550 F.2d 488 (9th Cir.), *cert. denied,* 434 U.S. 851, 54 L. Ed. 2d 119, 98 S. Ct. 162 (1977). Stewart argues that, under this theory, possessing stolen property must be a lesser included offense of burglary since his possession of the stolen property was the only direct evidence to connect him with the charged crime.

We decline to apply the "inherent relationship" test here. As stated in *United States v. Johnson, supra* at page 1239, quoting from *United States v. Whitaker,* 447 F.2d 314, 319 (D.C. Cir. 1971), the offenses must

> be so related that in the general nature of these crimes, though not necessarily invariably, proof of the lesser offense is necessarily presented as part of the showing of the commission of the greater offense.

We do not believe that possession of stolen property is so closely related to burglary as to make it a lesser included offense; the trial court properly refused to give Stewart's lesser included offense instruction.

Affirmed.

JAMES, J., concurs.

RINGOLD, J. (dissenting)—Because the majority concludes that "the State would be hard pressed to prove entry with intent to commit a crime if it were required to specify exactly which of several crimes available to the defendant he intended to commit", it expediently holds that the "intent" required by the burglary statute[3] is only "criminal *intent rather than intent to commit a particular crime.*" Applying this ipse dixit rule to the case before us, the majority further holds that the jury need not be instructed as to the elements of any underlying intended crimes. I disagree with these holdings and respectfully dissent.[4]

## SUFFICIENCY OF INFORMATION

Contrary to prior Washington practice, most other jurisdictions require a charge of burglary to specify the underlying intended crime:

> The rule is well established . . . that even though in burglary . . . the intent, as defined by the law, is simply to commit a felony, it is not sufficient for the indictment to use these general words; the particular felony intended must be specified. The allegation of the ulterior felony intended need not, however, *be set out as fully and specifically* as would be required in an indictment for the actual commission of that felony. It is ordinarily sufficient to state the intended offense generally, as by alleging an intent to steal, or commit the crime of larceny,

---

[3]RCW 9A.52.030 reads:

"Burglary in the second degree. (1) A person is guilty of burglary in the second degree if, *with intent to commit a crime against a person or property therein,* he enters or remains unlawfully in a building other than a vehicle.

"(2) Burglary in the second degree is a class B felony."
(Italics mine.)

[4]I agree with the majority that Stewart waived his objection to the sufficiency of the information. I discuss the adequacy of the information only because the majority's analysis of the sufficiency of the instructions is rooted in its determination that "[t]he State is not required to charge and prove intent to commit a particular crime, but only the presence of criminal intent at the time of illegal entry."

rape, or arson. . . . The averment that the accused has broken and entered a dwelling house for the purpose of committing a felony fails wholly to apprise him of the specific offense which it is claimed he intended to commit. The defendant is not to be oppressed by the introduction of evidence which he cannot be prepared to meet.

13 Am. Jur. 2d *Burglary* § 36 (1964). *See also Adkins v. State,* 389 P.2d 915 (Alaska 1964), and cases cited therein; *People v. Failla,* 64 Cal. 2d 560, 414 P.2d 39, 51 Cal. Rptr. 103 (1966); *Martinez v. People,* 163 Colo. 503, 431 P.2d 765 (1967); *State v. Minnick,* 53 Del. 261, 168 A.2d 93 (1960); *Kane v. State,* 392 So. 2d 1012 (Fla. Dist. Ct. App. 1981); *Ealey v. State,* 136 Ga. App. 292, 221 S.E.2d 50 (1975); *State v. Lora,* 213 Kan. 184, 515 P.2d 1086 (1973); *People v. Burd,* 13 Mich. App. 307, 164 N.W.2d 392 (1968); *Newburn v. State,* 205 So. 2d 260 (Miss. 1967); *State v. Cooper,* 288 N.C. 496, 219 S.E.2d 45 (1975); *State v. Sanders,* 280 Or. 685, 572 P.2d 1307 (1977); *State v. Wilson,* 297 N.W.2d 477 (S.D. 1980) (where trial court instructed on theft, it was harmless error for the information not to specify the intended crime); *Champlain v. State,* 53 Wis. 2d 751, 193 N.W.2d 868 (1972); *but see, e.g., Commonwealth v. Thompson,* 274 Pa. Super. 44, 417 A.2d 1243 (1979) (prosecutor not required to specify underlying crime, but if crime is specified, prosecutor must prove intent to commit that particular crime).

Prior Washington cases have uniformly held it sufficient to charge burglary in the language of the statute. *State v. Marker,* 4 Wn. App. 681, 483 P.2d 853 (1971); *see also Linbeck v. State,* 1 Wash. 336, 25 P. 452 (1890); *State v. Wilson,* 9 Wash. 218, 37 P. 424 (1894); *State v. Lewis,* 42 Wash. 672, 85 P. 668 (1906). The Washington rule followed from the former presumption of intent statute, RCW 9.19.030:

> Every person who shall . . . unlawfully enter any building or structure . . . shall be deemed to have . . . entered the same with intent to commit a crime therein, unless such . . . unlawful entry shall be explained by testimony satisfactory to the jury to have been made

without criminal intent.

This statute was first enacted in 1873, in substantially the same language. *See* Code of 1881, § 828. Relying on the presumption of intent, the Supreme Court first held in 1890 that the specific intended crime did not have to be charged in the information:

> [That it is generally necessary to set out the underlying crime in the information] is borne out by numerous authorities which the diligence of counsel has gathered for the information of this court; and we believe it to be the law in most of the states, *and that it would clearly be the law here were it not for § 828 of our code. . . .* [B]y virtue of its provisions the prosecution is *no longer* compelled to prove with what intent the defendant enters, but on the contrary, the unlawful entering having been proved, the intent to commit a crime or misdemeanor is presumed; and this being so, we are unable to see how *the accuracy required before such section was enacted* can now aid the defendant. The burden of showing the intent with which he entered is, by said section, cast upon him, and he can show such an intent to have been an innocent one as well without the details as to his specific intent as with it. Aided by [§ 828] the information was sufficient.

(Italics mine.) *Linbeck,* at 337–38. The court in *Linbeck* makes it clear that were it not for the presumption of intent statute, the underlying crime would have to be set out to give the defendant adequate notice of the charge against him. *See also Linbeck,* at 339 (Anders, C.J., concurring).

Because the State was not required, under the presumption of intent statute, to prove the specific intent with which an accused entered a building, no useful purpose would have been served by requiring the information to specify the underlying crime. *Linbeck; State v. Lewis, supra.* The burden was on the defendant in those cases to justify his unlawful entry. The mandatory rebuttable presumption of intent, however, is no longer the law in Washington. The Legislature repealed RCW 9.19.030 in 1975, replacing the presumption of intent with a permissive

inference. Laws of 1975, 1st Ex. Sess., ch. 260, § 9A.52.040, p. 840.

RCW 9A.52.040, applicable to the case before us, provides:

> Inference of intent. In any prosecution for burglary, any person who enters or remains unlawfully in a building may be inferred to have acted with intent to commit a crime against a person or property therein, unless such entering or remaining shall be explained by evidence satisfactory to the trier of fact to have been made without such criminal intent.

This section, of necessity, changes the prior practice. Intent to commit a crime is now an element of burglary to be proven by the prosecution beyond a reasonable doubt. *See In re Winship,* 397 U.S. 358, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970).

In *State v. Thomas,* 73 Wn.2d 729, 440 P.2d 488 (1968), the defendant had been charged with assault in the second degree[5] but the information failed to specify the felony which the assault allegedly enabled him to commit. Thomas moved at trial for dismissal on the grounds that the information was insufficient. Rather than dismiss the charge, the trial court permitted the State to amend the information to charge assault with intent to commit rape. The Supreme Court affirmed, holding that the information

> was, at the most, not sufficiently definite to apprise the appellant of the precise nature of the accusation and enable him to prepare his defense. As such, it was subject to a motion to make more definite and certain, and the court properly treated the appellant's demurrer as such a motion and required the amendment.

*Thomas,* at 731. The court in *Thomas* recognized that even though the information by definition states a crime when couched in the language of the statute, failure to specify the underlying crime may render the information unconstitu-

---

[5]Then RCW 9.11.020 provided: "Every person who . . . 6. Shall assault another with intent to commit a felony . . . Shall be guilty of assault in the second degree . . ."

tionally vague so as to require amendment to disclose the underlying crime.

Without specification of a particular underlying crime (or crimes) the information "does not define the crime with sufficient certainty to apprise the defendant of the nature of the accusation against him, to the end that he may prepare his defense and plead the judgment as a bar to any subsequent prosecution for the same offense". *Thomas,* at 730; *State v. Royse,* 66 Wn.2d 552, 403 P.2d 838 (1965). While any prejudice to the defendant, in the absence of a sufficiently detailed information, could presumably be cured by amendment or through discovery, this does not obviate the necessity of advising the defendant, by whatever means, of the precise crime with which he is charged.

### SUFFICIENCY OF INSTRUCTIONS

The majority holds that the trial court need not define the elements of various intended crimes for the jury because "So long as the jury unanimously finds that entry was effected with criminal intent,"[6] it may convict. One of the elements of burglary in the second degree, however, is that the defendant did in fact intend to commit *a crime.* The jury must be convinced of this beyond a reasonable doubt in order to return a verdict of guilty, although it may infer the requisite intent from the unlawful entry, if it so chooses. Without an instruction setting forth the requisite elements of the intended crime, the jury cannot find beyond a reasonable doubt that a defendant has "intent to commit a crime against a person or property therein". RCW 9A.52.030.

No inference of intent can be valid if the jury does not understand what it is that is being inferred. In the case before us, the jury might well have convicted Stewart of burglary for an unlawful entry with intent to commit some act which our statutes do not recognize as a "crime against

---

[6]RCW 9A.08.010(1)(a) defines "intent" as "A person acts with intent or intentionally when he acts with the objective or purpose to accomplish a result *which constitutes a crime.*" (Italics mine.)

a person or property therein." As Chief Justice Anders stated in his opinion in *Linbeck,* at page 340, to merely use the word "intent" with respect to a defendant accused of burglary without putting it in the context of a specific crime, "does not state any fact whatever, as to his intent, but only a conclusion of law."

The majority states at page 919 that if the Legislature had "intended to include the underlying crime as one of the elements of burglary, it would surely have done so", thereby bypassing the basic problem with the trial court's instructions by mischaracterizing Stewart's arguments. Stewart does not argue, contrary to the majority's statement at page 918, that "if theft was the underlying crime in question, then it is an element of the crime" of burglary. Rather, he argues that in order to reasonably infer the requisite "intent to commit a crime," RCW 9A.52.030, the jury must be told the elements of the intended crime. While the majority correctly states that Stewart need not have actually committed the underlying crime to be guilty of burglary, the jury must still find that he intended to commit that crime. To do so, it must be instructed as to its elements.

We must not underplay the importance, to both the defendant and society, of a specific determination by the jury of the crime which the offender intended to commit upon unlawful entry. Under our system of criminal justice the precise offense committed is a factor which of necessity must be considered by the sentencing judge and the parole board, by law enforcement officers both inside and outside of penal institutions, and by prosecuting authorities in any subsequent dealings with the defendant.

For the foregoing reasons, I would reverse and remand for a new trial.

Reconsideration denied October 8, 1982.

Review granted by Supreme Court December 17, 1982.