[Nos. 49128–3, 49138–1,     En Banc.     December 15, 1983.]
49144–5, 49145–3.

THE STATE OF WASHINGTON, *Respondent*, v. MARK ANTHONY JOHNSON, *Petitioner*.

THE STATE OF WASHINGTON, *Respondent*, v. DANIEL JOSEPH MACREADY, *Petitioner*.

THE STATE OF WASHINGTON, *Respondent*, v. HILTON CHELLY, *Defendant*, PHILLIP LEE STEWART, *Petitioner*.

THE STATE OF WASHINGTON, *Respondent*, v. COLIN JOHN KILPATRICK, *Petitioner*.

*Stephanie Searing* and *Timothy McGarry* of *Eastside Defender Association,* for petitioner Johnson.

*Michael Filipovic* of *Seattle–King County Public Defender Association,* for petitioners MacReady, et al.

*Norm Maleng, Prosecuting Attorney,* and *Deborah J. Phillips, Deputy,* for respondent.

UTTER, J.—These four consolidated cases present two main issues, both regarding the burglary statute. The first is the constitutionality of an instruction given in the language of RCW 9A.52.040, which allows the trier of fact to

presume (or infer) intent to commit a crime from unlawful entry.[1] The second issue is whether the State in a burglary prosecution must charge and prove the crime or crimes the defendant allegedly intended to commit.[2] We reach the same basic conclusion as has our Committee on Jury Instructions and hold that an instruction given in the language of RCW 9A.52.040 is not constitutionally permissible unless the defendant presents some evidence of intent in his case. We also hold, in light of our recent decision in *State v. Bonds*, 98 Wn.2d 1, 653 P.2d 1024 (1982), that in a burglary prosecution the information must specify and the instructions must specify and define the crime or crimes the defendant allegedly intended to commit. The jury need not agree on which crime was intended, however. Error exists in all four cases here, but is harmless in three.

Each defendant was charged with and convicted of burglary. The Court of Appeals affirmed each conviction (*see State v. Johnson*, 32 Wn. App. 1037 (1982); *State v. Mac-Ready*, 32 Wn. App. 928, 651 P.2d 752 (1982); *State v. Chelly*, 32 Wn. App. 916, 651 P.2d 759 (1982) (defendant Stewart); *State v. Kilpatrick*, 32 Wn. App. 1048 (1982)) and we granted defendants' petitions for review. The cases arose from independent sets of facts which are set forth separately.

### Johnson

On February 1, 1980, a burglar entered a Seattle apartment by breaking a window. A tenant in another apartment

---

[1]RCW 9A.52.040 provides in full:

"In any prosecution for burglary, any person who enters or remains unlawfully in a building may be inferred to have acted with intent to commit a crime against a person or property therein, unless such entering or remaining shall be explained by evidence satisfactory to the trier of fact to have been made without such criminal intent."

[2]The elements of burglary are (1) unlawfully entering or remaining in (2) a building other than a vehicle (3) with intent to commit a crime against a person or property therein. RCW 9A.52.030. If the building is a dwelling and the burglar is armed with a deadly weapon or assaults a person in the dwelling, the burglary is first degree. RCW 9A.52.020.

saw defendant Mark Johnson in the vicinity after hearing the glass break. That tenant called the police who a few minutes later apprehended Johnson several blocks away. Johnson twice fled before police were able to finally arrest him.

Johnson had in his possession a pair of red cloth gloves, a gold–plated wristwatch, and a silver certificate 10–dollar bill. Fibers from the gloves matched fibers found amidst the broken glass at the burglarized apartment. The watch and silver certificate belonged to one of the tenants.

One of the jury instructions given by the court was the statutory presumption[3] of intent provided for by RCW 9A.52.040.

> Any person who enters or remains unlawfully in a building may be inferred to have acted with intent to commit a crime against a person or property therein, unless such entering or remaining shall be explained by evidence satisfactory to you to have been made without criminal intent.

Clerk's Papers, at 16. Johnson objected to this instruction but solely on the ground that it constituted "a comment on the defendant's right to remain silent." Report of Proceedings, April 8, 1980, at 97.

After Johnson's conviction, the State indicated that it intended to institute a habitual offender proceeding. The State sought a continuance, however, because it believed it might not be able to rely upon a conviction then on appeal. The trial court granted the stay, but on appeal we granted discretionary review and transferred the case to the Court of Appeals which then vacated the stay and remanded to the trial court, after affirming the prior conviction. The trial court then dismissed the habitual offender proceeding on several grounds, and on April 29, 1981, sentenced Johnson, 13 months after his conviction.

---

[3]We use the term "presumption" broadly to include all instructions which inform a trier of fact that, under certain circumstances, it is required or allowed to draw a conclusion from certain supporting facts.

## MacReady

Early on the morning of July 29, 1979, the residents of the Brister house discovered defendant Daniel MacReady asleep at the bottom of the living room stairwell. Viola Brister called the police while her children locked themselves in the bedroom. Just as the police arrived, MacReady, apparently having awakened, ran out of the house but was quickly apprehended. He was moderately intoxicated and had in his pocket a Space Needle paperweight, worth only $1.50, which belonged to the Bristers.

MacReady had apparently entered the house through a basement window he had broken. It was on the sill of this window where the paperweight was kept. Nothing else in the house was missing or damaged. MacReady knew the Brister daughter, a friend of his sister, and had driven her home once or twice.

The information charged that MacReady entered the Brister house with intent to commit a crime, but did not specify the crime. The jury was instructed in similar language and the term "crime" was not defined. MacReady objected to neither the sufficiency of the information nor the instructions; however, he did except to the same presumption instruction given in Johnson's trial (see page 611) on the ground that it deprived him of his right to have the State prove every element of the charge beyond a reasonable doubt.

## Stewart

Shortly after 2 a.m. on February 13, 1980, Yuen Chun Gee saw three men loading cartons from a store into a black and blue Lincoln Continental parked near a broken window of the store. Gee called the the police but was unable to describe the three men other than to note that they were black.

While Gee was calling and the burglary was still in process, the store's owner, Ken Wong, was returning to check on the store. As he approached, he heard someone yell that he was coming and a light blue Pontiac pulled out, almost

hitting Wong's car. Wong also was unable to describe or identify any of the culprits.

About 30 minutes passed while Gee called and the police arrived in the area. Officer Patrick Moriarty spotted defendant Phillip Stewart and his codefendants Hilton Chelly and John Frost in a car which roughly matched Gee's description. Upon spotting the car, which was in a parking lot near the burglarized store, Moriarty approached to investigate. Inside the car he saw cartons of beer and cigarettes and so he placed the three occupants under arrest. The men protested their innocence, though they were cooperative. At trial, Chelly testified that a man had driven up beside them on the street and offered to sell them some alcohol. They had agreed and paid $25 or $30 for the cartons.

Other than to state that "[t]heft is a crime" (Clerk's Papers, at 17), the information and instructions failed to specify or define the crime or crimes Stewart and his codefendants allegedly intended to commit when they allegedly entered the store. Yet Stewart's only exception to the instructions was to the trial court's failure to give a lesser included offense instruction on the offense of possession of stolen property.

## Kilpatrick

Late on the evening of February 23, 1981, police, responding to a neighbor's call, discovered defendant Colin Kilpatrick in the furnace room of the office of Dr. Vernon Killingstad, a dentist. Though Kilpatrick denied it, police testified that he was wearing one leather glove and one surgical glove which were both introduced into evidence. A search of Kilpatrick's person produced a substantial amount of precious metals of the sort used by Killingstad in his lab. Kilpatrick also had a classified newspaper ad soliciting buyers of gold and silver.

Kilpatrick testified that he is in the business of buying and selling gold. Earlier on the day in question, he had met a man who had offered to buy his gold; however, he did not

know the man nor could he describe him. This man had allegedly told Kilpatrick to meet him at Killingstad's office. Kilpatrick claimed he had found the back door unlocked and gone in to wait but had become apprehensive when the police arrived and so had gone into the furnace room.

As in Stewart's and MacReady's trials, the information and instructions did not specify or define the crime or crimes Kilpatrick allegedly intended to commit when he entered the building, though Kilpatrick did not object to this omission.

I

Johnson and MacReady both claim that the trial courts erred in giving the instruction on presumption of intent which is set forth above, at page 611. In particular, they argue that use of such an instruction violated their constitutional right to have the State prove them guilty beyond a reasonable doubt. *See Sandstrom v. Montana,* 442 U.S. 510, 520, 61 L. Ed. 2d 39, 99 S. Ct. 2450 (1979).

A

Initially, the State argues that Johnson has failed to preserve this claim. The State correctly points out that an assignment of error to instructions will generally not be considered if not within the scope of an exception taken at trial. *See, e.g., Ralston v. Vessey,* 43 Wn.2d 76, 80, 260 P.2d 324 (1953). Here, Johnson's exception was premised solely on the ground that the instruction infringed upon his right to remain silent, a contention he has now apparently dropped.

Nonetheless, this does not bar Johnson from raising his new argument. Constitutional error may be raised for the first time on appeal (RAP 2.5(a)) and this is particularly true of error affecting such fundamental aspects of due process as the presumption of innocence and the right to have the State prove every element of the charge beyond a reasonable doubt. *State v. McHenry,* 88 Wn.2d 211, 213, 558 P.2d 188 (1977). The error assigned here involves precisely such principles. *See Sandstrom v. Montana, supra* at

520.

## B

There are four basic types of presumptions. *See generally State v. Savage,* 94 Wn.2d 569, 573–74, 618 P.2d 82 (1980) (plurality opinion); Note, *After Sandstrom: The Constitutionality of Presumptions That Shift the Burden of Production,* 1981 Wis. L. Rev. 519, 519 n.1 (hereinafter After Sandstrom). The first is the "conclusive" presumption, which requires the trier of fact to infer some fact from some supporting fact. The second type of presumption is the "persuasion–shifting" presumption, which shifts the burden of persuasion and requires the trier of fact to draw a certain inference unless the defendant proves otherwise by some specified quantum of evidence, usually a preponderance of the evidence. The third type of presumption is the "production–shifting" presumption, which does not alter the burden of persuasion but does require the trier of fact to draw a certain inference unless the defendant produces some evidence to the contrary. Each of these first three types of presumptions is "mandatory" in that the trier of fact is *required* in at least some cases to draw the inference. In contrast, the fourth type of presumption, the "permissive inference", never requires, but only permits, the trier of fact to draw the inference.

In attempting to reconcile the various decisions in the presumptions area, we have in the past recognized two other classifications as well, which, in light of recent commentary and developments, we now disavow as unhelpful. First, we have divided production–shifting presumptions into "strong" and "weak" depending on whether the defendant must produce "some" or "any" evidence. *See State v. Savage, supra* at 574. This distinction arises out of dictum in *County Court of Ulster Cy. v. Allen,* 442 U.S. 140, 60 L. Ed. 2d 777, 99 S. Ct. 2213 (1979) that a presumption which imposes an extremely low burden of production, such as producing "any" evidence, on the defendant "may well [have] impact . . . no greater than

that of a permissive inference, and it may be proper to analyze it as such." *Ulster Cy.*, at 157 n.16. While in *Savage* we read this tentative language as creating two classes of production–shifting presumptions, the better reading now seems to us to be that it simply recognizes that some production–shifting presumptions may conceivably be so insignificant that they are essentially permissive inferences.

A second class of presumption we have created is the "semi–mandatory" presumption. *See Savage,* at 575 n.1. This presumption places a burden of production on the defendant but at the same time does not require the jury to draw the underlying inference even when the defendant fails to meet his or her burden. *Savage,* at 575. The permissive character of this presumption renders the burden placed on the defendant largely meaningless and hence the so–called semi–mandatory presumption is really just a permissive inference.

## C

The United States Supreme Court has directly addressed the constitutionality of three of the four basic types of presumptions. First, it expressly held in *Sandstrom v. Montana, supra,* that conclusive and persuasion–shifting presumptions are *never* permissible. *See Sandstrom,* at 523–24. Moreover, the mere *possibility* that a presumption could be so interpreted by the jury is sufficient to render it unconstitutional. *Sandstrom,* at 519. On the other hand, the Court held in *County Court of Ulster Cy. v. Allen, supra,* that permissive inferences are constitutionally impermissible only when "under the facts of the case, there is no rational way the trier could make the connection permitted by the inference." *Ulster Cy.*, at 157.

The constitutionality of production–shifting presumptions has been left open by the Court. Case Comment, *The Evolving Use of Presumptions in the Criminal Law: Sandstrom v. Montana,* 41 Ohio St. L.J. 1145, 1158–59 (1980) (hereinafter Evolving Use); *see Sandstrom,* at 515; *cf. Ulster Cy.*, at 157 ("mandatory presumption is a far more

troublesome evidentiary device"). There are strong arguments, however, in support of the view that any mandatory presumption, be it production shifting or persuasion shifting, is unconstitutional. Instructing a jury that under certain circumstances it *must* draw a particular inference infringes upon both the right to trial by jury on that element and the right to have the State prove every element of the charge beyond a reasonable doubt. E. Cleary, *McCormick on Evidence* 831 (2d ed. 1972). Such an instruction is in reality just a polite form of a partial directed verdict, a procedural device which is "abhorrent to the criminal law." E. Cleary, at 804. *See also Sandstrom,* at 516 n.5 and cases cited therein; Evolving Use, at 1155; After Sandstrom, at 551. A mandatory presumption, even a mere production–shifting one, may also place undue pressure on a defendant to waive his right to remain silent. Evolving Use, at 1156.

We share these concerns and thus hold that when they are operative, production–shifting presumptions are impermissible. When the defendant presents no evidence to rebut the presumption, the jury is *required* to find an element of the crime, effectively removing that issue from the jury's consideration. In addition, the State is relieved of its burden of proving the element in question beyond a reasonable doubt. Both of these consequences violate the defendant's constitutional rights, as noted above and as we have recognized in our previous decisions (*see, e.g., State v. Roberts,* 88 Wn.2d 337, 342, 562 P.2d 1259 (1977)). A production–shifting presumption is thus impermissible when the defendant produces no evidence to rebut the presumption.

These constitutional infirmities disappear, however, when the defendant in his own case[4] produces sufficient evidence

---

[4]At oral argument, the State suggested that such evidence could be produced via cross examination during the State's case in chief. We reject this suggestion for two reasons. First, the limitation of cross examination to the scope of direct examination (ER 611(b)) means it is best viewed as simply an attempt to weaken the State's evidence. Second, we believe many jurors are likely to interpret a

from which a reasonable juror could find he has met his burden. In that situation, the jury becomes free to reject the specified inference and the presumption becomes in essence a permissive inference. In these circumstances, therefore, a production–shifting presumption is permissible, so long as it satisfies the *Ulster Cy.* test for permissive inferences.

## D

The proper categorization of the presumption instruction given in Johnson's and MacReady's trials is not entirely clear. On the one hand, the words "may be inferred" (see page 611) suggest a permissive inference. On the other hand, the clause "unless such entering or remaining shall be explained by evidence satisfactory to you" (see page 611; hereinafter "'unless' clause") appears to require the defendant to produce rebuttal evidence on the issue of intent, shifting at least the burden of production. *Accord, State v. Deiro,* 20 Wn. App. 637, 640, 581 P.2d 1079 (1978). The State's argument that this latter clause simply forbids the jury from even choosing to draw the inference if it is satisfied that the defendant has explained his entry is unconvincing. To tell a jury that it is not permitted to infer something it does not believe true, and will hence not wish to infer in any event, is entirely redundant.

While in *State v. Bishop,* 90 Wn.2d 185, 580 P.2d 259 (1978), we approved as permissive a much stronger presumption instruction framed in the language of the previous burglary statute,[5] that case is no longer authoritative after *Sandstrom.* Our central reason for concluding that the instruction at issue there described a permissive inference

---

requirement that the defendant produce evidence as a requirement that he do so in his own case.

[5]That instruction read:

"'Every person who shall unlawfully enter any dwelling *shall be deemed* to have entered the same with intent to commit a crime therein, unless such unlawful entering shall be explained by testimony satisfactory to the jury to have been made without criminal intent.'" (Italics ours.) *Bishop,* at 187 n.1.

was that another instruction indicating that the State was required to prove every element, including intent, beyond a reasonable doubt clarified the permissive nature of the presumption instruction. *See Bishop,* at 190. This precise reasoning was rejected in *Sandstrom* (*see Sandstrom,* at 518 n.7) and is thus no longer valid. In addition we did not consider in *Bishop,* as *Sandstrom* now requires (*see Sandstrom,* at 519), the mere *possibility* that a reasonable juror might have interpreted the presumption as mandatory.

We believe that there is such a possibility in the present cases. The "unless" clause quoted above might well lead a reasonable juror to interpret the instruction as creating a mandatory production–shifting presumption. This possibility is perhaps best evidenced by the actual jury confusion in MacReady's trial. In a note addressed to the court, the jury asked "if the defense did not present evidence, explaining the entering, do we *have* to infer criminal intent." MacReady Clerk's Papers, at 21. This demonstrates that at least some jurors interpreted the presumption as mandatory.

In light of this possibility, we must analyze the instruction here as a production–shifting presumption and reach the same basic conclusion as has our Committee on Jury Instructions. *See* Washington Pattern Jury Instructions—Criminal, comment to WPIC 60.05, 11 Wash. Prac. (Supp. 1982) (hereinafter WPIC 60.05 comment). Per our above analysis, such a presumption instruction may not be given when the defendant does not present evidence in his or her own case. *Accord,* WPIC 60.05 comment ("unless" clause should be deleted if no evidence to rebut intent). Since neither Johnson nor MacReady produced such evidence in their trials, the trial courts erred in giving the instruction permitting a presumption of intent.

We note, however, that giving the instruction in a modified form is almost always permissible and that in some instances it may even be given in the same form as the present case. If the "unless" clause is omitted, no reasonable juror could interpret the instruction as anything more

than a permissive inference and it would then be permissible whenever, under the facts of the particular case, there is a rational connection between the inferred fact, intent to commit a crime, and its supporting facts, unlawful entry. *See Ulster Cy.,* at 157. We can perceive of few, if any, cases in which intent to commit a crime would not have a rational connection to unlawful entry into a building. *See State v. Bishop, supra* at 189 ("[t]he noncriminal reasons for unlawfully entering a dwelling are few"). In addition, inclusion of even the "unless" clause is permissible if the defendant produces sufficient evidence on the issue of intent (*see* WPIC 60.05 comment), since under such circumstances production–shifting presumptions are not unconstitutional.

Though we thus recognize that presumption instructions embodying the language and/or concept embodied in RCW 9A.52.040 are permissible in some circumstances, we emphasize that they are rarely necessary and usually ill advised. *See generally State v. Savage, supra* at 583–84 (Hicks, J., concurring in the result). The general instruction on circumstantial evidence (see WPIC 5.01) will almost always be sufficient to inform the jury of its right to draw reasonable inferences. Further and more specific instructions will generally add only confusion.

## E

The State argues in State v. Johnson that any error was harmless beyond a reasonable doubt because of the overwhelming evidence of guilt. Indeed, the case against Johnson seems well nigh airtight—he was seen in the vicinity of the burgled apartment immediately after the window was broken, fibers from his gloves matched those found amidst the broken glass, and, when found by the police several minutes later, he twice attempted to flee and was in possession of goods stolen from the apartment.

The issue of whether error of the sort present here can ever be harmless was recently addressed by the United States Supreme Court in *Connecticut v. Johnson,* ___ U.S.

___, 74 L. Ed. 2d 823, 103 S. Ct. 969, 977–78 (1983). Unfortunately, only eight Justices saw a need to reach the issue and they divided evenly between the view that such error may be harmless only when intent is not a disputed issue and the view that such error may be harmless whenever there is overwhelming evidence of guilt. *Compare Connecticut v. Johnson, supra* at 977–78 (plurality opinion) *with Connecticut v. Johnson, supra* at 982–83 (Powell, J., dissenting). This decision thus provides little guidance for us in a case such as State v. Johnson in which all elements, including intent, are disputed but there is nonetheless overwhelming evidence of guilt. Absent a clear direction from the Supreme Court, we will continue to assume, as we have in the past, that harmless error analysis does apply. *See State v. Savage, supra* at 578–79.

■ The law of harmless error does require some clarification. Both this court and the United States Supreme Court have vacillated between two alternative approaches: (1) constitutional error is harmless only if it can be said beyond a reasonable doubt that it did not contribute to the verdict (hereinafter "contribution test"); and (2) constitutional error is harmless whenever it can be said beyond a reasonable doubt that the evidence not tainted by the error is so overwhelming that it *necessarily* leads to a finding of guilt (hereinafter "overwhelming evidence test"). *See generally State v. Evans,* 96 Wn.2d 1, 5–10, 633 P.2d 83 (1981) (Brachtenbach, C.J., concurring). There is ample precedent to support both approaches. *See* cases cited in *Evans,* at 9–10. Moreover, one commentator suggests that the case law may even support a third approach, which incorporates aspects of both tests. *See* Field, *Assessing the Harmlessness of Federal Constitutional Error—A Process in Need of a Rationale,* 125 U. Pa. L. Rev. 15, 33–34 (1976).

We need not decide in this case which of these tests is most appropriate, for even under the stricter contribution test we are convinced beyond a reasonable doubt that the erroneous presumption instruction was harmless. The instruction could only have affected the verdict if the jury

chose to rely upon it. Here, the evidence of intent to steal was not only overwhelming but was so strong that the jury could not have given even a second thought to the intent issue. In addition, the presumption instruction was so vague and confusing that it would have required some effort to decipher. In such circumstances, there is no reasonable possibility that the jury relied upon the erroneous instruction rather than simply coming to an immediate conclusion from the evidence that there was absolutely no question about intent.

## II

MacReady, Stewart, and Kilpatrick all assign error to the trial court's failure to specify and define the underlying crime or crimes they allegedly intended to commit at the time of unlawful entry. We agree that this omission was error, but find it to be harmless in Stewart and Kilpatrick.

## A

Several of our older cases hold that the State need neither charge nor prove what crime a defendant charged with burglary intended to commit. *See Bayless v. United States,* 381 F.2d 67, 76 (9th Cir. 1967) and cases cited therein. In creating this rule, however, we recognized its inconsistency with the majority view and expressly premised the rule on the former statute providing for a mandatory presumption of criminal intent from unlawful entry. *See Linbeck v. State,* 1 Wash. 336, 337–38, 25 P. 452 (1890). In light of the 1975 revision of that statute (*see* Laws of 1975, 1st Ex. Sess., ch. 260, § 9A.52.040) and the recent developments regarding the constitutionality of mandatory presumptions, *Linbeck* and its progeny are no longer authoritative.

In applying other statutes which include intent to commit a crime as an element of the offense, we have held that the State is required to specify the crime or crimes which were allegedly intended. *See State v. Bonds,* 98 Wn.2d 1, 17, 653 P.2d 1024 (1982) (rape after felonious entry into building); *State v. Royse,* 66 Wn.2d 552, 403 P.2d 838

(1965) (assault with intent to commit a felony). As we noted in *Linbeck v. State, supra,* this is the majority rule. *See State v. Chelly,* 32 Wn. App. 916, 923, 651 P.2d 759 (1982) (Ringold, J., dissenting) (consolidated with State v. Stewart in the Court of Appeals) and cases cited therein. We have also held, however, that any claim of error in this respect is waived if the defendant fails to request a bill of particulars. *See Bonds,* at 17.

In the present cases, none of the defendants requested a bill of particulars. They have therefore waived their claims of error.

B

There is no similar bar, however, to the defendants' claims that the jury was not properly instructed because the trial courts failed to specify and define the crime or crimes they allegedly intended to commit. The gist of this claim is that this omission constituted a failure to define every element of the offense charged. Such a failure is an error of constitutional magnitude and nondirection which may be raised for the first time on appeal. *State v. Davis,* 27 Wn. App. 498, 506, 618 P.2d 1034 (1980); *see generally State v. McHenry,* 88 Wn.2d 211, 214, 558 P.2d 188 (1977).

It is a basic principle of due process that jury instructions must define every element of the offense charged. *See, e.g., State v. Emmanuel,* 42 Wn.2d 799, 821, 259 P.2d 845 (1953); *State v. Timmons,* 12 Wn. App. 48, 55, 527 P.2d 1399 (1974). This is especially important in cases where an element of the offense charged is intent to commit another crime.

> It cannot be said that a defendant had a fair trial if the jury must guess at the meaning of an essential element of the crime with which the defendant is charged, or if the jury might assume that an essential element need not be proven. Where the crime charged is the attempt to commit an offense, but the offense allegedly attempted is not defined for the jury, the jury might assume that the State need only prove an attempt as defined by the court and not what was attempted. The State has thus been

relieved of its burden of proving every element of the crime charged beyond a reasonable doubt.

*State v. Davis, supra* at 506.

In a burglary prosecution one of the elements which the State must prove is "intent to commit a crime against a person or property". *See* RCW 9A.52.030. To define this element, the court must define a "crime", for the jury may otherwise convict a defendant for unlawful entry with intent to commit an act which the jury believes, but which is actually not, a crime.[6] *Accord, People v. Failla,* 64 Cal. 2d 560, 564–65, 414 P.2d 39, 51 Cal. Rptr. 103 (1966); *Champlain v. State,* 53 Wis. 2d 751, 756, 193 N.W.2d 868 (1972). The only method of effectively defining "crime" is to specify and then define whatever possible crimes the defendant may have intended in the particular case.

Specification of the crime or crimes a burglary defendant allegedly intended to commit is necessary for another reason as well. *State v. Bonds, supra,* is almost directly on point, just as it is regarding the need for specification of the intended crime or crimes in the information. We noted in *Bonds* the general rule that a jury should be allowed to consider alternative methods of committing a crime only if there is substantial evidence supporting each alternative. *See Bonds,* at 17 (quoting *State v. Franco,* 96 Wn.2d 816, 823, 639 P.2d 1320 (1982)). Where intent to commit one of any number of crimes is an element of an offense, we concluded that this limitation can be applied only when the instructions specify the various crimes the defendant may have intended to commit. *See Bonds,* at 17–18. Absent specification, it is impossible to prevent the jury from unguided speculation as to any and all criminal acts it might imagine.

---

[6]For example, a lay jury might well conclude that taking property with an intent to return it or openly taking property under a good faith claim of title are crimes even though they are not. *See* RCW 9A.56.020; *State v. Burnham,* 19 Wn. App. 442, 445, 576 P.2d 917 (1978) and authorities cited therein. In State v. Mac-Ready, the jury might have believed that taking the paperweight was a crime even if MacReady intended to return it or forgot that he had it in his pocket.

While the State correctly points out that an instruction in the language of the statute is normally sufficient, this rule does not hold when the statutory language does not provide sufficient guidance. *People v. Failla, supra* at 565; *cf. State v. Royse, supra* at 556–57 (general rule that offense may be charged in language of statute applies only when statute defines crime with sufficient certainty). Moreover, this rule does not relieve the court of its duty to define each and every element of the crime. We therefore hold that it is error for the trial court in a burglary prosecution to fail in its instructions to specify and define the crime or crimes allegedly intended.

## C

We are aware of the difficulty which arises when the State must specify an intended crime which has not been consummated, but we believe it can be surmounted. In the first place, relatively few burglaries take place without at least some step indicating the nature of the crime intended, such as entry into the assault victim's bedroom or the attempted removal of property. Absent any such evidence, moreover, the State is justified in alleging, and the jury justified in inferring, an intent to commit theft, that being the most usual motive for burglary. *United States v. Thomas,* 444 F.2d 919, 924 (D.C. Cir. 1971) and cases cited therein.

> 'The love of gain, the desire to get and have, is so wide a principle of human nature, that, other motives being eliminated, that remains as a sort of residuary solvent of conduct.' * * * People are not accustomed, in the nighttime to enter the homes of others, when asleep, with innocent purposes. The usual object is theft, . . .

*United States v. Thomas, supra* at 924 (quoting *State v. Woodruff,* 208 Iowa 236, 239–40, 225 N.W. 254 (1929)). Were this insufficient to protect the State's interests, we seriously doubt that other states would have adhered to the majority rule, as they apparently have. *See State v. Chelly, supra* at 923 (Ringold, J., dissenting) and cases cited therein.

We note further that, while the instructions must define and specify the underlying crime or crimes allegedly intended, any number of alternatives may be set forth, as long as each is supported by substantial evidence. *See State v. Bonds, supra* at 17–18; *United States v. Thomas, supra* at 923–24. We also reject the defendants' contention that the jury need be unanimous as to which crime was intended. *See Bonds,* at 17 (jury need not be unanimous as to what crime was intended in felonious entry to commit rape); *United States v. Thomas, supra* at 924; *People v. Failla, supra* at 569. While we have held such unanimity to be necessary where the element in question is actual commission of a crime (*see State v. Green,* 94 Wn.2d 216, 233, 616 P.2d 628 (1980)) that holding does not extend to offenses which include as an element mere intent to commit an underlying crime. Whether jury unanimity is required turns on whether the burglary statute describes a single offense which may be committed in several ways or whether it describes several separate and distinct offenses which each constitute burglary. *See State v. Arndt,* 87 Wn.2d 374, 377, 553 P.2d 1328 (1976). At least with respect to the different intents which may be present,[7] the burglary statute seems to us to describe a single offense and jury unanimity on the underlying intent is therefore unnecessary. *See Arndt,* at 377.

## D

In State v. MacReady and State v. Kilpatrick, the trial courts made absolutely no effort to specify or define the crime or crimes the defendants allegedly intended to commit. While the court in State v. Stewart did instruct the jury that "[t]heft is a crime" (Stewart Clerk's Papers, at 17) it neither defined theft nor specified to the jury what crimes Stewart might have intended to commit. Thus, the trial courts erred in all three cases.

In State v. Stewart and State v. Kilpatrick, however, we

---

[7]We need not decide whether the aggravating circumstances which differentiate first and second degree burglary (*see* RCW 9A.52.020) create separate offenses.

find the error harmless. Stewart and his codefendants apparently conceded that the men who unlawfully entered the store intended to and did commit the crime of theft. Their defense was simply that they were not those men. In such circumstances, the failure to specify and define the crime or crimes intended could not have contributed to the verdict. *Cf. Connecticut v. Johnson,* ___ U.S. ___, 74 L. Ed. 2d 823, 103 S. Ct. 969, 978 (1983) (erroneous instruction on presumption of intent may be harmless where defense is alibi defense). The error was therefore harmless under either harmless error test.

The effect of the error in Kilpatrick is perhaps slightly less clear but there is nonetheless sufficiently overwhelming evidence of his guilt. Applying the contribution harmless error test as well, we are also convinced beyond a reasonable doubt that it did not contribute to the verdict. Failure to specify and define the underlying crime in a burglary prosecution can affect the verdict only if the jury concludes there was some borderline conduct intended which it believes is, but which is actually not, a crime. In the circumstances of this case, we see no such possibility. We think it clear beyond a reasonable doubt that no jury which believed Kilpatrick's story that he was simply meeting someone to sell his scrap gold could have believed his conduct to include an "intent to commit a crime against a person or property therein". We also think it clear beyond a reasonable doubt that there is not here any borderline intent which the jury might have found to exist. The only plausible alternatives were to believe Kilpatrick's story or to believe that he intended to, and did, steal the scrap gold. Of these, the jury chose the latter and no specification and definition of the crime or crimes allegedly intended would have changed its verdict.

## III

Stewart alone additionally contends that the trial court erred in failing to give a lesser included offense instruction on the crime of possession of stolen property. He recognizes

that this was not error under the traditional rule, whereby a defendant is entitled to a lesser included offense instruction only when each element of the lesser offense is a necessary element of the greater. *See State v. Roybal,* 82 Wn.2d 577, 583, 512 P.2d 718 (1973). Instead, he urges that we adopt the "inherent relationship" test of the Ninth Circuit. Under that test, a lesser included offense instruction must be given whenever (1) the offenses relate to protection of the same interests and (2) "'in the general nature of these crimes, though not necessarily invariably, proof of the lesser offense is necessarily presented as part of the showing of the commission of the greater offense.'" *United States v. Johnson,* 637 F.2d 1224, 1239 (9th Cir. 1980) (quoting *United States v. Whitaker,* 447 F.2d 314, 319 (D.C. Cir. 1971)).

We decline to recognize and apply the "inherent relationship" test in the circumstances of this case. We did tacitly recognize such a test in *State v. Workman,* 90 Wn.2d 443, 584 P.2d 382 (1978), where we held that the element of "circumstances warranting alarm" necessary to prove unlawful possession of a weapon was included within attempted first degree robbery because it was "an inherent characteristic of an attempt to commit a robbery." *Workman,* at 448. There, however, the elements of the lesser offense were *invariably* inherent in the greater offense and were part of the same act. Even federal cases have applied the "inherent relationship" test only to lesser offenses which were in fact part of the same act. *See, e.g., United States v. Slater,* 692 F.2d 107, 109 (10th Cir. 1982) (bank larceny included within bank robbery); *United States v. Johnson, supra* at 1241 (assault with dangerous weapon with intent to do bodily injury included within assault resulting in serious bodily injury); *United States v. Pino,* 606 F.2d 908, 917 (10th Cir. 1979) (careless driving included within involuntary manslaughter by automobile); *United States v. Whitaker, supra* at 320 (unlawful entry included within burglary). Here, in contrast, the possession of stolen property was an act entirely subsequent to the unlawful

entry with intent to commit theft which constituted the burglary. The mere fact that evidence of the former offense was used to circumstantially prove the latter does not make it a lesser included offense.

## IV

Finally, Johnson asserts that he has a constitutional right to speedy sentencing which was violated by the 13–month delay pending disposition of the habitual offender proceeding.

■ A number of courts have held or assumed that the constitutional right to a speedy trial encompasses a right to speedy sentencing and our CrR 7.1 establishes such a right. *State v. Edwards,* 93 Wn.2d 162, 167 n.2, 606 P.2d 1224 (1980) and cases cited therein. We have held that habitual offender proceedings are not subject to speedy trial requirements; however, those cases on their facts have dealt with applicability of the "60–day rule" set by CrR 3.3 and its predecessors. *See State v. Allen,* 75 Wn.2d 17, 20, 448 P.2d 332 (1968); *State v. Persinger,* 62 Wn.2d 362, 364, 382 P.2d 497 (1963). Since a habitual offender proceeding is properly viewed as part of the original felony case (*State v. Greene,* 75 Wn.2d 519, 521, 451 P.2d 926 (1969)), we hold that it is subject to speedy sentencing requirements.

■ To constitute a violation of the constitutional right to a speedy sentencing, delay must be "purposeful or oppressive". *Pollard v. United States,* 352 U.S. 354, 361, 1 L. Ed. 2d 393, 77 S. Ct. 481 (1957). This determination turns on a balancing of four factors: (1) length of the delay; (2) reason for the delay; (3) the defendant's assertion of his or her right; and (4) the extent of prejudice to the defendant. *State v. Braithwaite,* 34 Wn. App. 715, 667 P.2d 82 (1983); *State v. Cunningham,* 405 A.2d 706, 710 (Del. Super. Ct. 1979), *rev'd without opinion,* 414 A.2d 822 (1980), *cited in State v. Edwards, supra* at 167 n.2. *See also Barker v. Wingo,* 407 U.S. 514, 533, 33 L. Ed. 2d 101, 92 S. Ct. 2182 (1972). These same factors should provide guidance in application of CrR 7.1, which prohibits "unrea-

sonable delay".

Applying these factors to the present case, we find no violation of Johnson's rights. In light of the fact that the State, as was its right, wished to prepare and institute a habitual offender proceeding, the delay of 13 months, while long and not to be encouraged, was not outrageous. *Cf. State v. Edwards, supra* at 167 (delay of 2 years for ordinary sentencing). Only 9 months of the delay is directly attributable to the stay—the remainder was due to preparation for the habitual offender proceeding and preparation for sentencing after the dismissal. The reason for the delay was the State's error of law and while this does not per se justify the delay, it does render it somewhat less odious. Moreover, it cannot even be said with certainty that Johnson was prejudiced by the delay, since his pretrial detention should be taken into account by the parole board. *See Reanier v. Smith,* 83 Wn.2d 342, 352–53, 517 P.2d 949 (1974) (pretrial detention must be credited against maximum and mandatory minimum sentences and should be considered by parole board in setting minimum sentence). We thus find no violation of his right to a speedy sentencing.

Having addressed all issues presented, we order the following dispositions. The convictions of Mark Johnson, Phillip Stewart, and Colin Kilpatrick are affirmed. The conviction of Daniel MacReady is reversed and his case remanded for a new trial.

WILLIAMS, C.J., and STAFFORD, BRACHTENBACH, and PEARSON, JJ., concur.

DOLLIVER, J., concurs in the result.

ROSELLINI, J. (dissenting)—I would affirm the Court of Appeals result as well as analyses in all four cases. I therefore dissent.

The majority initially examines the constitutional validity of a jury instruction based on RCW 9A.52.040. That instruction states:

Any person who enters or remains unlawfully in a building may be inferred to have acted with intent to commit a crime against a person or property therein, unless such entering or remaining shall be explained by evidence satisfactory to you to have been made without criminal intent.

Majority opinion, at 611. After an extensive discussion of the various types of presumptions, the majority concludes that this instruction creates an unconstitutional "mandatory production–shifting presumption." Majority opinion, at 619. I disagree. I find the State's argument, as to the function this instruction serves, more persuasive. The State contends, and I agree, that the instruction simply creates a permissive inference. As admitted by the majority, the first part of the instruction is obviously permissive. It states simply that "[a]ny person who enters . . . a building may be inferred to have acted with intent". Contrary to the majority's position, I believe the clause, "unless such entering or remaining shall be explained by evidence satisfactory to you", simply circumscribes the jury's ability to draw the inference when the entrance has been explained. The majority rejects this conclusion by asserting that if that were true, the clause would be entirely redundant. That may be, but no court has yet ruled that redundancy is unconstitutional.

Even if I were to agree that the instruction here created a mandatory rather than permissive presumption, I do not agree with the majority's conclusion that it is unconstitutional.

As noted in *State v. Savage*, 94 Wn.2d 569, 618 P.2d 82 (1980), there are several forms of mandatory presumptions. The presumptions vary with the type or degree of burden they impose upon the defendant in attempting to rebut the presumption. First, a presumption may require that the defendant rebut it with a quantum of evidence that is greater than "some" evidence. These presumptions are constitutionally impermissible because they shift the burden of persuasion to the defendant. *Savage*, at 574; *Sand-*

*strom v. Montana,* 442 U.S. 510, 524, 61 L. Ed. 2d 39, 99 S. Ct. 2450 (1979). The second type of mandatory presumption is one which requires the defendant to come forward with "some" evidence to rebut the presumed connection. *Savage,* at 574. The final type of mandatory presumption imposes an extremely low burden which may be satisfied by "any" evidence. *Savage,* at 574.

The Court has strongly suggested that this latter form of presumption is constitutional. For instance, in *County Court of Ulster Cy. v. Allen,* 442 U.S. 140, 158, 60 L. Ed. 2d 777, 99 S. Ct. 2213 (1979), the Court observed that presumptions that impose extremely low burdens may have an impact no greater than that of a permissive inference. I believe the instruction here falls into this category.

The instruction given here simply stated that the jury may infer intent "unless such entering or remaining shall be explained by evidence *satisfactory* to you". (Italics mine.) Majority opinion, at 618. The instruction does not quantify or restrict the evidence that the jury could consider. Consequently, the jury is free to reject the inference on any evidence produced by the defendant which it believed. The instruction combines a permissive first clause with a small burden of proof in the second phrase. These factors convince me that the instruction is properly analyzed as the type of mandatory presumption whose burden is so light that it is merely permissive. Such instructions are constitutional.

Finally, the majority finds that it is error not to specify the crime which the defendant intended in the information or instructions. The majority in *State v. Chelly,* 32 Wn. App. 916, 919–20, 651 P.2d 759 (1982) succinctly stated why such a rule would be unwise. Judge Durham, writing for the majority, observed:

Knowledge of criminal intent usually resides exclusively in the mind of the defendant. He may unlawfully enter a building with the intent to commit a certain crime, and ultimately commit a different crime, or no crime at all. He is nonetheless guilty of burglary. In either case, the

State would be hard pressed to prove entry with intent to commit a crime if it were required to specify exactly which of several crimes available to the defendant he intended to commit. Such a requirement would seriously weaken the enforcement of burglary laws. Of course, in cases where the specific crime intended is made obvious by surrounding circumstances, the better practice would be to identify that crime. Nonetheless, the trial court did not err in failing to instruct on the elements of theft.

*Accord, Commonwealth v. Thompson,* 274 Pa. Super. 44, 417 A.2d 1243 (1979) (prosecutor not required to specify underlying crime). This is the better rule and one which should be retained in this state.

I therefore dissent.

DORE and DIMMICK, JJ., concur with ROSELLINI, J.