[No. 12240. Department One. November 21, 1914.]

THE STATE OF WASHINGTON, *Appellant*, v.

JOHN G. JOHNSON, *Respondent*.[1]

FISH—TAKING OYSTERS FROM STATE RESERVE—INFORMATION—SUFFICIENCY. An information charging accused with taking oysters from state oyster land reserves between eight o'clock in the evening and five o'clock in the morning between designated days is sufficient without alleging that the taking was without a license or without particularizing the state oyster reserve from which the oysters were taken, other than by stating the county of its location, since the gravamen of the offense is the taking in the nighttime from any of the state oyster reserve lands, under Rem. & Bal. Code, §§ 5248, 5253, declaring that "no license shall be granted to take seed from any oyster land reserve except between the first day of April and the fifteenth day of June of each year, and at no time before 5 o'clock in the morning, or after 8 o'clock in the evening," and that taking oysters from any of the state oyster reserves contrary to the provisions of the act shall constitute a misdemeanor.

Appeal from a judgment of the superior court for Mason county, Claypool, J., entered May 5, 1914, dismissing as insufficient an information for taking oysters from state oyster land reserves. Reversed.

*R. A. Lathrop*, for appellant.

*T. P. Fisk* and *Troy & Sturdevant*, for respondent.

MORRIS, J.—Appeal by the state from a judgment dismissing an information and discharging the accused, upon the ground that the information did not state facts sufficient to

[1]Reported in 144 Pac. 57.

constitute a crime. The charging part of the information is as follows:

"He, the said John G. Johnson, in the county of Mason, state of Washington, on the 15th day of December, 1913, between eight o'clock in the evening of the 14th day of December, 1913, and five o'clock in the morning of the said 15th day of December, 1913, wilfully and unlawfully took a quantity of oysters from the state oyster land reserves."

The alleged defect is in the failure to state that the taking was without a license, and to particularize the state oyster reserve from which the oysters were taken. The controlling statutes are Rem. & Bal. Code, § 5248 (P. C. 373 § 15), providing that:

"No license shall be granted to take seed from any oyster land reserve except between the first day of April and the fifteenth day of June of each year, and at no time before 5 o'clock in the morning, or after 8 o'clock in the evening;" and § 5253 (P. C. 373 § 25) making it a misdemeanor to take oysters from any of the state oyster reserves contrary to the provisions of the act.

Our statutes regarding the sufficiency of informations are very liberal. They provide that it is sufficient to set forth the act charged in ordinary language and in such a manner as to enable a person of common understanding to comprehend what is intended. What is the offense named in this act so far as here material? Plainly, the taking of oysters from the state oyster land reserves except between April 1 and June 15 of each year, or at any time between eight o'clock p. m. and five o'clock a. m. of the following day. The information charges the unlawful taking of oysters from the state oyster land reserves in Mason county on the morning of December 15, 1913, between five a. m. of that day and eight p. m. of the preceding day. Every essential feature of the crime declared is embodied in the crime charged, and no difficulty would be experienced by any person of common understanding in knowing the particular act charged against

him.  There is no need to charge that the taking was without
a license, for the state issues no license to take oysters from
its reserves on December 14 or between eight o'clock p. m.
and five o'clock a. m. of the following day.  It is not the
failure to have a license that constitutes the crime, but the
taking on the day and during the hours indicated; and such
a taking will constitute a violation of this act even though
the person charged had a license to take oysters at such
times as the state permits oysters to be taken from its re-
serves.  Neither is it fatal to fail to state the particular
oyster reserves from which the oysters were taken, assuming
that there are a number of such reserves in Mason county.
Since the state permits oysters to be taken from its reserves,
the gravamen of the crime is, not the taking of the oysters,
but the taking at prohibited times; and the place from whence
the oysters were taken need be stated only in sufficient terms
to confer jurisdiction upon the court in which the act is
charged.  We have degrees of arson and burglary which
provide against wilful burning in the nighttime or felonious
entry in the nighttime, and the gravamen of those offenses
is the commission of the act in the nighttime; the dwelling
house burned or burglarized need be stated only with suffi-
cient particularity to show jurisdiction.  It seems to us the
analogy is perfect, and that the one case requires no more
particular description of the place at which the crime was
committed than does the other.  Counsel for respondent states
that the public records show more than fifty oyster reserves
in Mason county.  The public records might likewise show
that the same individual owned fifty dwellings in a given
county, but this would not require a statement of the par-
ticular dwelling burned or burglarized so long as the one
burned is described as within the county in which juris-
diction was sought.

The case that comes nearest sustaining respondent's con-
tention is *State v. Muller*, 80 Wash. 368, 141 Pac. 910,
where is was held that, in charging the offense of bringing

intoxicating liquor into a dry unit under the local option law, it is necessary to name the unit in which the offense was committed. This is so because the several units of a county are municipal or political entities and can only be known by their particular name, just as an individual is known by his particular name; and to refer to any one of the several units in a county as "a dry unit in said county" is no more of a description than to refer to an individual against whom a crime has been committed in no other way than as "a person in said county." Besides, the particular statute under which the offense was laid in the *Muller* case localizes the place as "in the unit where the violation is alleged to have occurred," thus making the particular unit into which the liquor is brought a material part of the offense. It was because of this definiteness of description that it was held it was necessary to designate the particular unit. Such reasoning, because of the absence of similar language in the two statutes, has no application here.

We are, therefore, of the opinion that the information was sufficient and should have been sustained. The judgment is reversed.

CROW, C. J., GOSE, and PARKER, JJ., concur.