[No. 25707.   Department One.   August 8, 1935.]

THE STATE OF WASHINGTON, *Respondent* v. C. H. HULL,
*Appellant.*[1]

[1] Reported in 48 P. (2d) 225.

*C. D. Cunningham* and *Cecil C. Hallin,* for appellant.

*Jas. E. Sareault* and *Lloyd B. Dysart,* for respondent.

MAIN, J.—The defendant was charged by information with the crime of manslaughter. Thereafter, an amended information was filed, which will be referred to as the information. To this information, the defendant directed motions to strike and make more definite and certain in certain particulars and, in the alternative, for a bill of particulars. He also presented a demurrer. What disposition the trial court made of these motions and the demurrer, the record does not disclose. It may be inferred, however, that they were all overruled, because it is apparent that the case went to trial upon the information as drawn. After a verdict of guilt was returned, the defendant made a motion in arrest of judgment and also for a new trial, both of which motions were overruled. From the sentence and judgment, the defendant appeals.

While the evidence is in dispute in some particulars, the facts which the jury had a right to find may be summarized as follows: The accident which gave rise to the prosecution happened at about eleven o'clock a. m., October 10, 1934, on the Pacific highway south of the city of Chehalis, in Lewis county, at a point near what is called the intersection of the Onalaska road with that highway. On the day mentioned, Melvin M. Dunn, Tom Triplett and George Rose were at work repairing the highway, and were employed by the state highway department. This crew had a state highway truck, to which was attached a tar wagon or pot. The truck was parked at a point about one hundred feet south of the Onalaska road. The paved portion of the highway was a little over twenty feet wide. Before the men began work, they placed a "SLOW" or

warning sign about two hundred and fifty feet south of the point where they were working.

On the day of the accident, Dunn was engaged in pouring oil on a defect in the edge of the pavement, Triplett was placing gravel on the oil, and Rose followed and did the tamping with a tamping bar which was about five feet long, with a metal part, about six inches in diameter at the bottom, weighing approximately thirty pounds. While the men were thus working, a milk truck approached from the south. The driver thereof, seeing the warning sign and the men at work, swung to the left until the left wheels were just over the yellow line in the center of the pavement. Before reaching the "SLOW" sign, the truck had been traveling at a speed of about thirty-five miles an hour, and thereafter, as it passed the men, was going between twenty and twenty-five miles.

The appellant approached from the south, driving an automobile, and was accompanied by one William F. Jones. At the same time, an automobile was approaching from the north. When the automobile driven by the appellant, as the driver thereof says, approached the milk truck, it swung to the left, and the appellant saw the approaching car; then he swung to the right and passed around the milk truck on that side at a speed, as some of the witnesses say, of not less than thirty-five miles an hour, and one placed the speed at between forty and fifty miles. As the automobile proceeded around, the two right wheels were off the pavement. The automobile either struck George Rose, who was doing the tamping, and killed him, or the automobile struck the tamping bar and it, in turn, hit Mr. Rose.

The jury had a right to find from the evidence that he was hit by the automobile. After the accident, there was what witnesses testified to as brain tissue

and blood on the windshield, and also some other things, which indicated an impact between the deceased and the automobile. After the impact, the automobile proceeded on the road for a distance of about two hundred feet and stopped. Mr. Rose died within a few minutes after the accident. It was for the killing of Mr. Rose that the appellant was charged with manslaughter and, as above stated, convicted.

The first question is whether the trial court committed error in overruling the motions directed to the information and the demurrer. The charging part of the information is as follows:

"The said C. H. Hull, in said Lewis county, state of Washington, on or about to-wit, the 10th day of October, A. D. 1934, then and there being did unlawfully and feloniously kill a human being to-wit, George Rose, while he the said C. H. Hull was in the act of committing violations of the laws of the state of Washington, to-wit, while in the act of passing a motor vehicle going in the same direction on the right hand side thereof there being then and there no exigencies of the situation requiring such passing, and he, the said C. H. Hull then and there not having a clear view ahead of 200 yards while in the act of operating a motor vehicle over and upon the highways of this state in a reckless manner and while operating a motor vehicle over and upon the highways of this state at a rate of speed greater than that permitted by law."

It will be noticed that, by this information, the appellant was charged with violation of the laws of this state in three particulars: (a) While in the act of passing a motor vehicle on the right side thereof when no exigencies were present justifying such passing; (b) that he operated the automobile in a reckless manner; and (c) that he operated it at a greater speed than permitted by law. The other provision in the information, with reference to a clear view ahead of two

hundred yards, was withdrawn during the trial, and no further mention will be made of that.

The motions to make more certain were directed to the charges of driving in a reckless manner, and proceeding at a greater speed than permitted by law. The demurrer challenges the sufficiency of the information to charge a crime.

The objection to the information seems to proceed on the assumption that it contains three counts; but this is not a correct view of it. It charges the offense of manslaughter in having been committed in three different ways, and if any one of the charges is good, the information charges the crime. *State v. Gaul*, 88 Wash. 295, 152 Pac. 1029.

Rem. Rev. Stat., § 2057 [P. C. § 9270], provides that an information must be direct and certain as regards the party charged, the crime charged, the particular circumstances of the crime when they are necessary to constitute a complete crime. Subdivision 6, § 2065 [P. C. § 9281], provides that an information is sufficient if it can be understood therefrom that the act charged as a crime

". . . is clearly and distinctly set forth in ordinary and concise language, without repetition and in such manner to enable a person of common understanding to know what was intended."

█ It will be admitted that the information is not as specific as it should have been. This, however, does not mean that it was not sufficient. In Rem. Rev. Stat., § 6362-45 [P. C. § 196-45], it is made unlawful for any person to drive a motor vehicle in a reckless manner over and along the public highways of this state, and in the same section what is meant by reckless driving is defined. The charge in the information, simply of reckless driving, is meager, but not fatal.

█ As to the charge of traveling at a greater speed

than permitted by law, without specifying the speed, what has been said about the reckless driving charge may well be applied here, but the charge was sufficient as against a demurrer. *State v. Randall,* 107 Wash. 695, 182 Pac. 575; *State v. Gunns,* 136 Wash. 495, 240 Pac. 674.

With reference to the charge of passing on the right-hand side of the milk truck, the objection to the information is somewhat serious, but technical. Rem. Rev. Stat., subdivision 2, § 6362-41 [P. C. § 196-41], provides that:

"Vehicles proceeding in the same direction on over-taking another vehicle . . . shall pass to the left;"

provided that there may be a variance where the exigencies of the situation will permit the passing on that side. It will be noticed, by referring to the copy of the information above set out, that it essentially charges, in this regard, that the appellant was in the act of committing violations of the law of this state "while in the act of passing a motor vehicle" going in the same direction. It does not comply with the statute, in that it does not recite that the appellant was proceeding or traveling in a motor vehicle. As we have already indicated, while the information bears evidence on its face of having been improvidently drawn, it was nevertheless sufficient to inform a person of common understanding of the charge that was made against him.

While the cases of *State v. Fillpot,* 51 Wash. 223, 98 Pac. 659, and *State v. Johnson,* 82 Wash. 347, 144 Pac. 57, are not directly in point, they may be cited as indicating a liberal view, rather than the old and technical, in the matter of sustaining indictments or informations.

With reference to the information here in question, it may be said, as was said in *State v. Fillpot, supra:*

"In reading the information before us, it is impossible to see how the appellant could be misled, or how he could fail to understand the exact nature of the charge preferred against him."

The appellant places considerable reliance upon the case of *State v. Gesas,* 49 Utah 181, 162 Pac. 366, but the information in that case is in some respects materially different from the one now before us, assuming, if the informations were identical, we would adopt the view of the Utah court.

The trial court did not err in not sustaining the motions directed against the information and overruling the demurrer.

The next question is whether the giving of instruction No. 6 was error. This instruction, while not in the exact phraseology of the one that was considered in *State v. Ito,* 129 Wash. 402, 225 Pac. 63, is in effect and substance the same. The instruction in that case was approved, and we see no reason for disturbing the holding. It is true that there was a dissenting opinion in that case which took the opposite view, but the law is found in the majority opinion rather than in the dissent.

The next question is whether the court erred in the giving of instruction No. 10. This instruction is very long and somewhat involved. A more concise instruction would have been more informative. We see, however, nothing in the instruction which constitutes prejudicial error. There were some things in it which were favorable to the appellant.

The next question is whether the trial court erred in allowing certain testimony in rebuttal which was by way of contradiction of what the appellant had testified to on cross-examination, or by way of impeachment. It will be admitted that the questions were not put in the usual and approved form of im-

peaching questions; but this is a matter which rests to some extent in the discretion of the court, and the rule was not so far departed from in this case as to be prejudicial to the appellant and call for a reversal. *State v. Walters*, 7 Wash. 246, 34 Pac. 938, 1098; *State v. Sullivan*, 129 Wash. 42, 224 Pac. 586; *State v. Susan*, 152 Wash. 365, 278 Pac. 149.

The appellant makes a number of other contentions which do not appear to us to be of sufficient moment to call for a detailed discussion. We have, however, given them attentive consideration, and in none of them do we find substantial merit.

The judgment will be affirmed.

MILLARD, C. J., TOLMAN, BEALS, and GERAGHTY, JJ., concur.

