[No. 32621.  Department Two.  July 8, 1954.]

# The City of Seattle, *Respondent*, v. Veida S. Morrow, *Appellant*.[1]

[1]Reported in 273 P. (2d) 238.

*Max R. Nicolai,* for appellant.

*A. C. Van Soelen* and *C. V. Hoard,* for respondent.

SCHWELLENBACH, J.—Veida S. Morrow was charged in justice court in Seattle as follows:

"M. E. READY being first duly sworn says: That on or about *April 29th, 1952,* at the City of Seattle, in King County, Washington, the said defendant did willfully and unlawfully: ·
operate a motor vehicle along and upon a public highway, in the said City, to wit: *upon East Madison Street* in such a manner as to endanger or be likely to endanger, other persons or property; in violation of Section 46, Ordinance No. 73375, which Ordinance is more fully referred to in Count 2 herein, and by this reference hereby made a part of this charge;
(Count 2) Then and there being, said defendant did operate a motor vehicle along and upon a public highway in the said City to wit: upon *East Madison Street* without having in his immediate possession a valid and subsisting motor vehicle operator's license;
in violation of Sections *46 and 172* of Ordinance No. 73375 of the City of Seattle."

She was convicted on both counts and appealed to the superior court, where the case was tried *de novo.* She appeals her conviction in the latter court.

Police Patrolman Melvin E. Ready testified that about eleven p. m., April 29, 1952, he and Patrolman Thomas N. Stone were traveling easterly on east Madison, in Seattle, in pursuit of a car which, they had been notified, contained two

exconvicts, both armed; that they were on the inside lane; that at times they were compelled to travel up to forty miles per hour in order to keep up with the car ahead; that in the vicinity of Seventeenth a car pulled up behind them and the driver (defendant) honked her horn and then pulled up and passed them on the right side (it was permissible under the ordinance to pass on the right side under the circumstances); that she pulled up in front and slackened her speed; that they pulled into the opposite lane and passed her; that she passed them again at the 1800 block and again got in front of them; that they again passed her and got in front; that they then observed that the car they were pursuing made a left turn at Twentieth; that they signaled for a left turn and the defendant pulled up very closely behind them, honking her horn all the time; that they were afraid to turn for fear of having an accident with the defendant; that they crossed the intersection and attempted to turn around at the driveway to a cafe, but could not do so because defendant followed them closely and continued to blow her horn; that they felt that defendant was having trouble with her car, so they stopped their car and the witness got out and went back to talk to her. At this point, the car containing the two exconvicts disappeared entirely from the picture.

Officer Ready further testified that he asked the defendant if there was something wrong and that she said, "Yes, there is something wrong, you are making an illegal turn here. I always wanted to get the Police Department and this looks like my chance;" that he asked her for her driver's license, which she produced; that when he looked at it he informed her that her license had expired; that some argument ensued, and, fearing trouble with the defendant, they radioed Sergeant Holland; that he came and interviewed her but got no co-operation and then ordered Ready to write the citation; that when he handed her the book to sign she refused and marked up the citation; that he told her that if she didn't sign he would have to take her down to the station and book her; that she said she always wanted to spend a night in jail, so he took her to the station. The following

appears on the face of the citation: "Failure to sign must result in immediate arrest." Ready's testimony was corroborated by that of Officer Stone and Sergeant Holland.

The defendant was booked at the police station at 11:30 p. m., April 29, 1952. Certain personal property was taken from her, but she refused to sign an itemized list thereof. She was released on bail at 2:45 a. m., April 30, 1952, and her property was returned to her.

Miss Morrow is the wife of James T. Metcalf, a consulting engineer. She is an attorney who has practiced law in Seattle since 1923. At one time, she served for six years as an assistant corporation counsel. She testified that, on the evening in question, she and her husband had had dinner downtown with some out-of-town guests, and that he preceded her home in another car; that she was traveling up east Madison on the inside lane; that, at Sixteenth, a police car started up from the curb and cut ahead of her; that she passed it at Seventeenth; that at the 1900 block it followed her closely with its spotlight shining brightly on her rear view mirror; that it turned to the right and drove up ahead of her in the lane to her right; that at Twentieth the driver slowed up, put out his hand and crowded into the center lane ahead of her. She testified, "Without any other warning the automobile turned directly in front of me and made a U-turn directly in front of me, and I then laid on the horn and slammed on my brakes, and I came to a stop right at the rear end of their car." She testified that she only passed the police car once, and that at all times they were both traveling between twenty-three and twenty-six miles per hour.

She testified that she had quite an argument with the officers, accusing them of reckless driving and telling them that driving a police car did not give them any license to drive carelessly. She explained that the reason she marked up the citation was in order to prevent them from writing any other violations after she signed it. She said that she did not sign the citation because the pen would not write. She testified that the argument was about the driver's license only, and that they were going to give her a ticket

for that alone; that nothing was said about reckless driving; that the only charge on the citation was violation of No. 172; that she asked what that meant and Ready said, "Driving without a driver's license"; that, at police headquarters, she heard Captain Johnson say, "Book her for negligent driving," and that she then saw Ready add No. 46 onto the citation. This section covers negligent driving. This testimony was denied by the officers, who testified that both numbers were on the citation before it was handed to her for her signature. Although an examination of the citation lends credence to her testimony, the jury found otherwise.

■ Appellant's first contention is that the trial court penalized her for having the temerity to take an appeal, by imposing a fine of $250 for what is generally considered a $25 offense. A fine of $25 may be appropriate in traffic court. However, appellant chose to appeal her conviction to the superior court, which she had a right to do. One of the hazards of such an appeal, where the trial is *de novo*, is that, upon conviction, the fine will be increased. We find no merit in this contention.

■■ The principal argument of appellant for a reversal of the conviction is that Count 1 of the complaint fails to state a crime. This issue was properly raised by appellant's motion in arrest of judgment in accordance with Rule 12 (3) (b), Rules of Pleading, Practice and Procedure, 34A Wn. (2d) 76. An information, or criminal complaint, may state a crime, but still be so vague as to be subject to a motion for a bill of particulars, or it may be so vague as to fail to state any crime whatsoever.

■ Objection to an information which fails to state a crime may be made at any time, but objections to the sufficiency or definiteness of an information must be made before the trial commences. *State v. Beebe,* 185 Wash. 655, 56 P. (2d) 682, and cases cited therein. Here, appellant's motion that the city be directed to specify the particular acts of negligence (which motion was in the nature of a request for a bill of particulars) was made after the plea of not guilty, and at the beginning of the trial. It was not timely made.

To support her contention that the complaint fails to state a crime, appellant relies on *Seattle v. Jordan,* 134 Wash. 30, 235 Pac. 6, and *Seattle v. Proctor,* 183 Wash. 299, 48 P. (2d) 241. In the *Jordan* case, the defendant was charged with the crime of disorderly conduct. We held that the term "disorderly conduct" as used in the ordinance had no well-defined meaning, and that one charged with that offense, in the words of the ordinance alone, would have no knowledge of the nature of the offense charged. In the *Proctor* case, the complaint was drawn substantially in the language of the ordinance, but we held that it was insufficient, since it did not allege which specific articles were falsely and deceptively advertised. As pointed out later, the above cases are distinguishable on their facts from the case at bar.

Section 46 of the traffic code provides in part:

"*Negligent Driving.* It shall be unlawful for any person to operate a motor vehicle in a negligent manner over and along the public highways of this City. For the purpose of this section 'operate in a negligent manner' or 'negligent driving' shall be construed to mean the operation of a motor vehicle upon the public highways of the City in such a manner as to endanger, or be likely to endanger, any person or property."

In *State v. Hull,* 182 Wash. 681, 48 P. (2d) 225, we held that, under a statute making it unlawful to drive a motor vehicle in a reckless manner, and defining "reckless driving" merely as "the operation of a motor vehicle upon the public highways of this state in such a manner as to endanger or inconvenience unnecessarily other users of such highway," an information which simply charged reckless driving was good as against demurrer. We said:

"It will be admitted that the information is not as specific as it should have been. This, however, does not mean that it was not sufficient. In Rem. Rev. Stat., § 6362-45 [P. C. § 196-45], it is made unlawful for any person to drive a motor vehicle in a reckless manner over and along the public highways of this state, and in the same section what is meant by reckless driving is defined. The charge in the information, simply of reckless driving, is meager, but not fatal."

In *State v. Forler,* 38 Wn. (2d) 39, 227 P. (2d) 727, we said:

"It is undoubtedly the rule in this jurisdiction, as in many others, that it is sufficient, in charging a crime, to follow the language of the statute, where such crime is there defined, and the language used is adequate to apprise the accused with reasonable certainty of the nature of the accusation." [Citing cases.] . . .

"We do not think the charge of operation of a motor vehicle in a 'reckless' manner so impossibly vague that a person of common understanding cannot comprehend what he must establish in order to defend himself against it. To meet such a charge, he need only show, or attempt to show, that he was driving in a careful, prudent, and law-abiding fashion. Surely, this places no insuperable burden upon him. Conceding that a model of pleading might well have set forth in detail evidence tending to establish the reckless character of the driving of the accused; still, in view of the language of the statute, we are not of the opinion that a recital of such evidence was necessary, or that appellant in this case was in any way prejudiced by reason of its omission."

■ We are satisfied that Count 1 of the complaint charged the crime of negligent driving, and that the trial court correctly denied appellant's motion in arrest of judgment.

■ Appellant also contends that her motion in arrest of judgment as to Count 1 should have been granted, because it was not proved that she was guilty of the crime charged. We have stated generally the conflicting testimony. Evidently, the jury believed the officers and did not believe her.

■ Appellant's driver's license was produced while she was at police headquarters. There is a dispute as to whether or not it was returned to her, the officers claiming that it was and appellant claiming that it was not. At any rate, it was not produced at the trial. The burden of proof was on the city either to produce it or, upon a proper showing of its loss, to introduce competent testimony as to its contents. We feel that this was not done, and that Count 2 should not have been submitted to the jury. However, this error was

cured when the court granted appellant's motion in arrest of judgment as to that count.

Appellant contends that the trial court should have likewise arrested judgment on Count 1, or in any event have granted a new trial, because the jury might have brought in a verdict of guilty on the negligent driving count, solely because it found that appellant operated her motor vehicle without having a valid, subsisting driver's license. We have examined the instructions given by the trial court, none of which were excepted to. They clearly and separately defined the charges of negligent driving and of operating a motor vehicle without a valid and subsisting driver's license. We cannot conceive how the members of the jury could possibly have been misled. They clearly understood that each count was a separate charge. Furthermore, the verdict which they signed was as follows:

"We, the jury, in the above entitled case find the defendant:

"1. GUILTY of the offense of negligent driving as charged in Count 1 of the complaint.

"2. GUILTY of the offense of operating a motor vehicle without a valid operator's license as charged in Count 2 of the complaint."

We find no merit in the other assigned errors, and they will not be discussed.

The judgment and sentence is affirmed.

GRADY, C. J., HILL, DONWORTH, and WEAVER, JJ., concur.